UNITED STATED BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Brett J. Batoha,	Chapter 13
	Case Number: 21-31487
Debtor.	Hon. Joel D Applebaum
_____/

**OPINION AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO PLAN AND DENYING PLAN CONFIRMATION**

This matter is before the Court upon the Chapter 13 Trustee's objection to confirmation of the Debtor's proposed chapter 13 plan (the "Plan"). For the following reasons, the Trustee's objections to confirmation are SUSTAINED and confirmation of the Plan, as currently proposed, is DENIED.

**FACTS**

Debtor filed this chapter 13 case on November 2, 2021. On November 16, 2021, Debtor timely filed the Plan. (Dkt. No. 10). The Plan contains several nonstandard provisions to this District's Model Plan, only one of which is currently the subject of the Trustee's objection. The nonstandard plan provision at issue provides:

> F. Plan provision V.J.2. shall be modified as follows: "Debtor has remitted all Plan payments (as defined in Paragraph II.A. and II.B. of the Plan) coming due after the date of entry of the Order Confirming Plan, with all amounts remitted pre-confirmation shall be [sic] credited and applied to any amounts coming due after the date of entry of the Order Confirming Plan[.]

**ANALYSIS**

This case presents a variation on the issue addressed by the court in *In re Kinne*, 2020 WL 5505912 (Bankr. E.D. Mich., September 11, 2020). There, the court addressed when the applicable commitment period should begin to run; from the date a debtors' first payment

1

becomes due, *see* 11 U.S.C. § 1326(a)(1)(usually, 30 days after the petition date), or from the date of entry of the Order Confirming Plan, as provided in § II.A. of our Model Plan. As the *Kinne* court explained, "[f]or most Chapter 13 debtors, the more time they have to complete their plans the better. Longer plans often mean lower payments, which benefit debtors whose plans are barely feasible or who need to cure significant pre-petition defaults." *Id*. at *1. The debtors in *Kinne*, however, were the exception. For the Kinnes, beginning their applicable commitment period on the date of the first payment under § 1326(a)(1) benefitted them because "[t]hey have made 14 monthly pre-confirmation payments to the Trustee, have no pre-petition defaults to cure, and propose less than a 100 percent dividend to unsecured creditors." *Id*. Although it recognized a split of authority on this issue, the court ultimately ruled that the Kinnes' applicable commitment period began on the date of the first payment under § 1326(a)(1). However, because the court did not believe it had the authority to vacate Administrative Order 17-04 adopting our District's Model Plan, or to alter the language contained therein, it held that in cases before it, the Model Plan "will remain unchanged unless a debtor seeks to change the start date of the commitment period." *Id*. at *3.

As previously noted, this case presents a variation on *Kinne*. Rather than beginning the applicable commitment period on the date the first payment comes due under § 1326(a)(1) or the date of entry of the Order Confirming Plan as provided in § II.A. of our Model Plan, Debtor proposes a third option -- one that gives Debtor all of the benefits of both options, but without any of the concomitant detriments that might result from making one choice or the other. Debtor proposes to keep the Model Plan's later applicable commitment period start date but requires that all pre-confirmation payments be applied against plan payments to be made during the applicable commitment period. In a 100% plan, this may not matter much, although as the Chapter 13

2

Trustee notes, 100% plans can subsequently be modified.[1]  In a plan that pays less than 100%, however, this third option may matter very much.

Under our Model Plan, where the plan does not propose to pay 100% to unsecured creditors, pre-confirmation payments are additive to the amount paid by a debtor during the applicable commitment period.  By way of example, if a plan proposes to pay $1,000 per month using our Model Plan, the total payments received during a 60 month applicable commitment period should be $60,000.  If the plan is not confirmed until 5 months after the first payment becomes due under § 1326(a)(1), total plan payments should be $65,000.  This additional $5,000 may help cure pre-petition arrearages, reduce monthly plan payments, help smooth out the bumps on the long road to discharge, or even increase the amount distributed to unsecured creditors.  In a sense, it is the price for beginning the applicable commitment period on the plan confirmation date.  In any event, it does not get remitted back to the debtor or applied against future plan payments.  Using this same example, if the 60 month applicable commitment period begins to run on the date the first payment becomes due under § 1326(a)(1), a debtor may well save $5,000, but he or she will lose the benefits the court identified in *Kinne*.  Here, however, Debtor wants it both ways -- a longer plan period (in the Court's example, 65 months), but without paying the additional amount into the plan (in the Court's example, $5,000).  This he cannot do.  Debtor must elect when his applicable commitment period begins to run.[2]

---

[1] In this case, Debtor has proposed a 100% plan and the Trustee anticipates that the plan could complete within 55 months.  But even a 100% plan must complete within 60 months, and an election one way or another could result, among other things, in higher monthly payments.

[2] Because the Court has not been asked to rule on whether it will follow *Kinne* or insist on the unmodified language in our Model Plan, the Court takes no position on this issue.

Accordingly,

IT IS HEREBY ORDERED that the Trustee's objections to confirmation are

SUSTAINED and confirmation of the Plan, as currently proposed, is DENIED.

**Signed on May 2, 2022**



/s/ Joel D. Applebaum
_____
Joel D. Applebaum
United States Bankruptcy Judge